UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:11-cr-00084-JMS-KPF-1 |
| | ) | |
| DANNY G. HARMON, | ) | |
| *Defendant.* | ) | |
| | ) | |

# ORDER

Presently before the Court is the Government's motion to continue the trial in this criminal case, which is currently set for July 18, 2011. [Dkt. 26.] The Government seeks a thirty-day continuance. The Defendant, Danny G. Harmon, objects to the motion to the extent that the Government seeks to have the additional days be excluded from the time limits in the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, which requires that a defendant's trial begin within seventy, non-excludable, days of indictment or initial appearance, *Bloate v. United States*, 130 S. Ct. 1345, 1349 (2010) (citations omitted).

## BACKGROUND

On May 10, 2011, the Grand Jury returned an indictment against Mr. Harmon, charging him with having conspired to possess marijuana with the intent to distribute it, attempting to possess marijuana with intent to distribute, and using a telephone to facilitate a drug trafficking offense. [Dkt. 1.] Mr. Harmon was promptly arrested and had his initial appearance on May 13. [Dkt. 9.] Consistent with the requirements of the Speedy Trial Act, the Court scheduled his trial to begin on July 18. [Dkt. 8.]

On June 30, the Government filed the one and only motion to continue in this case. Although the Speedy Trial Act requires the Court to make findings when ruling on motions to con-

tinue, the Government's motion was unsupported by any affidavit and offered only conclusory assertions about the Government's un-readiness for trial on July 18 and failed to provide sufficient detail to enable the Court to determine whether the Government had exercised due diligence. [Dkt. 26.] Accordingly, the Court scheduled a hearing on the motion.

The evidence presented at the hearing on the Government's motion shows that the Government initially handled this case as routine, with no special urgency and with no expectation that the trial would actually take place on July 18, as scheduled. For example, the Special Agent in charge of the investigation, Agent Steele, testified that he waited until about the first week of June to arrange to have all the marijuana that was seized in the Government's investigation to be transported to Indiana for trial. He initially asked the Drug Enforcement Agency ("DEA") for an aircraft to transport the drugs, but after two or three weeks, the DEA advised that its aircraft were tied up with other matters. Eventually he had to ask the National Guard for help, which it provided; all the seized drugs were brought here in Indiana by the end of June.

The scheduling of the lab tests for the marijuana also demonstrates the lack of expectation that the July 18 trial date would occur. In 2009, state authorities in Oklahoma and Arizona had seized marijuana that the Government contends was part of the conspiracy alleged in the indictment. And in January 2011, Indiana and Kansas authorities seized additional marijuana. Although the Government had, according to Agent Steele, decided to make the state investigations a federal case approximately six or seven months ago, it was not until July 5 that the Government discovered that the seized evidence had not been fully tested. An Oklahoma lab had done at least core testing (i.e. testing of a sample), but the Government discovered that the chemist who performed the test retired approximately two months ago and moved to the Philippines. Because the DEA lab is backed up for three to six months for testing, the Government recently asked the Ma-

rion County lab to perform the testing, and it expects the results by the end of the week—with trial scheduled to begin on Monday. The Government offered no evidence as to why this evidence was not obtained or at least accounted for during the pre-indictment investigation period.

Although significant evidence had been developed pre-indictment, the testimony at the hearing suggested potentially important post-indictment developments in the case. According to Agent Steele, a confidential informant in the Marion County jail, where Mr. Harmon was initially detained after his arrest in this case, indicated that Mr. Harmon had approached the confidential informant about wanting a potential witness in this case "gotten rid of." The confidential informant was, allegedly, able to draw a map to the witness' house, a map that the Government determined was accurate, thereby corroborating the claim enough to merit moving the witness for the witness' own protection. Agent Steele also testified about events that he believed constituted attempts to intimidate other witnesses, which he believes can be traced back to Mr. Harmon. Finally, Agent Steele testified that the Government has discovered that Mr. Harmon made hundreds of lengthy phone calls after he was detained using other inmates' telephone access codes. Although a review of those phone calls is not yet complete, and many calls have been requested but not yet received, Mr. Harmon allegedly requested participants in some of the phone calls to help him dissipate his assets that may be subject to forfeiture.

## DISCUSSION

The Government seeks to exclude the time associated with its continuance under two provisions of the Speedy Trial Act: as delay "resulting from the absence or unavailability of…an essential witness," specifically, the Oklahoma chemist who tested the marijuana before his retirement, 18 U.S.C. § 3161(h)(3)(A); and as delay necessary "for the ends of justice," *id.* § 3161(h)(7)(A).

### A. 18 U.S.C. § 3161(h)(3)(A)

Although the Government claims that the retired Oklahoma chemist is a currently unavailable, essential witness, the Court cannot agree. The Government has transported the Oklahoma marijuana to Indiana. Other chemists can test it to confirm its status as a controlled substance—indeed, the Government has already sent it to the Marion County lab for analysis and should receive the results this week. Absent an argument, much less evidence, that the retired Oklahoma chemist performed tests that cannot be replicated here, the Court cannot find the retired chemist an "essential" witness to qualify for 18 U.S.C. § 3161(h)(3)(A), even assuming (without deciding) that the witness is unavailable despite "due diligence" as is also required, *id.* § 3161(h)(3)(B).

Additionally, at the hearing, the Government cited its inability to locate a witness who had been overheard bragging about "throwing rocks" at a Government witness's house around the time shots were allegedly fired. The Court finds that this absent witness is not "essential" to the proof of the Government's case against Mr. Harmon as charged.

### B. 18 U.S.C. § 3161(h)(7)(A)

To qualify as excludable time under 18 U.S.C. § 3161(h)(7)(A), the Court must find that "the ends of justice served by [continuing the trial date] outweigh the best interest of the public and the defendant in a speedy trial." In making that calculus, the Speedy Trial Act requires the Court to consider at least four factors "among others." 18 U.S.C. § 3161(h)(7)(B).

Under 18 U.S.C. § 3161(h)(7)(B)(i), the Court must consider "[w]hether the failure to grant [the] continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." The Government makes no argument under this factor. The Court must, therefore, assume that proceeding to trial on the current trial date would not be impossible or result in a miscarriage of justice. *See Brownstone Publ'g, LLC*

*v. At&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, *7 (S.D. Ind. 2009) (explaining that in our adversarial system, the Court is "entitled to assume" that if a party has meritorious arguments to make, the party will make them in the first instance, rather "than reserv[ing] arguments to present later if earlier ones fail" (quotation omitted)).

The next factor that the Court must consider is "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself…." 18 U.S.C. § 3161(h)(7)(B)(ii). Although the Government seeks to justify its continuance under this factor, the Court finds that the factor—at least as the case was charged—weighs in favor of maintaining the current trial setting. Only one defendant is charged in this case. The charges are straightforward; the indictment, for example, outlines the alleged conspiracy in under two pages. [*See* dkt. 1.] The only thing initially "unusual or complex" about this case is the Government having apparently been caught unprepared and by surprise because the defendant elected to stand on his statutory right for a speedy trial. Indeed, Agent Steele acknowledged he's been "scrambling" since July 2nd, when he first learned or was most recently reminded of the trial date.

The Government made the point at the hearing that it was "unusual" for a trial to actually proceed on the first setting. While many defendants seek continuances of their first trial settings—and obtain them by offering proof of their need for additional time to adequately prepare—the Speedy Trial Act requires the Government to be presumptively prepared for trial within seventy days absent exigent, case-specific circumstances. Congress has demanded that first

trial settings can and should occur.  The Government must prepare itself accordingly; it must not assume that any particular defendant will agree to a continuance.[1]

The Court will, however, ultimately count the second factor in the Government's favor.  Despite the Government's inability to show due diligence with respect to evidence in existence as of the date of the indictment, the testimony adduced at the hearing on the motion to continue suggests that the Government has exercised particular due diligence in pursuing evidence as to Mr. Harmon's consciousness of his own guilt—namely, that he allegedly attempted to dissipate assets, to intimidate witnesses, and possibly even to arrange for one witness to be "gotten rid of," according to Special Agent Steele's investigation.  That evidence is not fully developed, though through no lack of effort on the part of the Government.  If it exists, such evidence is proper for the Government to explore and (assuming all other evidentiary rules permit) to present to the jury.  *See United States v. Mokol*, 2011 U.S. App. LEXIS 12608, *8 (7th Cir. 2011) ("[A] defendant's attempts to intimidate potential witnesses are probative of his consciousness of guilt.  Rule 404(b), restricting bad acts evidence, will ordinarily not keep such evidence from the jury." (collecting cases)).  Because this alleged consciousness of guilt did not manifest itself until after Mr. Harmon's initial appearance, the Government could not have obtained it before Mr. Harmon's arrest.  And because of the need to obtain and review between 200 and 250 phone calls that Mr. Harmon has made while detained, and follow up any leads that may result from them, it is unrea-

---

[1] The Court notes that it has no evidence before it of any attempt by Mr. Harmon to string the Government along with assurances that he would seek or agree to a continuance, only to backtrack later.  Even where a defendant does want a continuance, however, the Court notes that continuances are not granted as a matter of right.  The public has an interest in speedy trials—an interest that 18 U.S.C. § 3161(h)(7)(A) specifically commands that the Court to weigh in the balance.  Thus prudence suggests that motions for trial continuances should not wait until the last minute, as was done here—for continuances, even agreed ones, may be denied.

sonable, even with due diligence, to expect the Government to be prepared for trial on July 18. While the case as charged was simple, the case as it now stands is significantly more complex.

The third factor only comes into play if the defendant's arrest precedes indictment. 18 U.S.C. § 3161(h)(7)(B)(iii). Because Mr. Harmon was arrested after indictment, this factor is irrelevant to the present motion.

Under the fourth factor, the Court must consider the following:

> Whether the failure to grant [the] continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(iv). The Government argues that this factor weighs in favor of the continuance to the extent that the case does not already qualify as a "complex" case under the second factor. As to this argument, the Court agrees, for the reasons already stated.

While 18 U.S.C. § 3161(h)(7)(A) permits the Court to consider other factors when deciding whether to grant a continuance, the Government has failed to identify any that militate in favor of the continuance. To the extent that the Government contends that it should receive a continuance to permit it to undertake plea negotiations, the Court rejects that proposition because Mr. Harmon has indicated that he is not interested in a plea. [Dkt. 28 ¶4.] To the extent that the Government claims that seventy days is not enough time for it to "pre try" its case through witness interviews, the Court rejects that claim. The Government investigated this case for months before it asked the Grand Jury to consider charges against Mr. Harmon. Unlike Mr. Harmon, the Government had the right to request the Grand Jury to subpoena potential witnesses and to require them to answer the Government's questions. To whatever extent Seventh Circuit authority might recognize the importance of providing the Government with the opportunity to "pre try"

its cases—and the Government has offered none—the Government has made no showing that it could not do so within the seventy days provided under the Speedy Trial Act, if it had exercised due diligence with respect to the evidence and witnesses available before the indictment in this case was returned.

Thus, only factors two and four weigh in favor of granting the continuance. On balance, the Court finds them sufficient to authorize a continuance under 18 U.S.C. § 3161(h)(7)(A). The Government deserves a reasonable opportunity to investigate potential evidence about Mr. Harmon's alleged consciousness of guilt, especially given that Mr. Harmon makes no claim that he will suffer any actual prejudice from the thirty-day continuance that the Government seeks.

## CONCLUSION

The Court **GRANTS** the Government's Motion to Continue. [Dkt. 26.] The trial in this matter is **VACATED AND REST** from July 18, 2011 to August 22, 2011,[2] Courtroom 307, Indianapolis, Indiana, to begin at 9:00 a.m. A final pre-trial conference will be set by separate entry. In making this scheduling order, the Court finds that "the ends of justice served by [continuing the trial] outweigh the best interest of the public and the defendant in a speedy trial," because a continuance is needed to permit the Government a reasonable opportunity to investigate evidence of possible consciousness of guilt on Mr. Harmon's part. 18 U.S.C. § 3161(h)(7)(A).

07/12/2011

*signature*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[2] The Court notes that the second trial setting is a little beyond thirty days. At the hearing, defense counsel advised the Court of a pre-planned vacation in early August. The setting on the 22nd is scheduled after the conclusion of the vacation, and gives counsel a week back in the office to finalize trial preparation.

**Distribution via ECF only:**

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Melanie C. Conour
UNITED STATES ATTORNEY'S OFFICE
melanie.conour@usdoj.gov

Jack Crawford
CRAWFORD & DEVANE
crawdevlaw@indy.rr.com