UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANNY G. HARMON, | ) |
| Petitioner, | ) |
| v. | ) No. 1:15-cv-00082-JMS-DML |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**Entry Granting Second Amended Motion for Relief Pursuant to 28 U.S.C. § 2255**

For the reasons explained in this Entry, the second amended motion of Danny Harmon for relief pursuant to 28 U.S.C. § 2255, dkt. [67], is **GRANTED.**

## I. Background

An indictment was filed on May 10, 2011, charging Mr. Harmon with conspiracy to distribute 100 kilograms or more of marijuana, three counts of attempting to possess with intent to distribute marijuana, and one count of using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. §§ 846, 841, and 843. No. 1:11-cr-0084-JMS-DKL-1; Crim. Case; dkt. 1. An Information pursuant to 21 U.S.C. § 851(A)(1) alleging a prior felony drug conviction was filed on May 18, 2011. *Id.*, dkt. 16.

Mr. Harmon hired defense attorney Jack Crawford, who appeared in the case on May 31, 2011. *Id.*, dkt. 20. With the filing of the § 851, Mr. Harmon was facing ten years to life.

The government sought a single continuance of the trial on June 30, 2011. *Id.*, dkt. 26. Mr. Harmon objected and a hearing was conducted on July 11, 2011. After the hearing, the Court

granted the government's motion to continue the trial and reset the trial for August 22, 2011. *Id.,* dkt. 42.

On July 28, 2011, a Superseding Indictment was filed adding charges of attempting to kill and intimidate a witness and increasing the amount of marijuana charged to 1,000 kilograms or more, which increased Mr. Harmon's potential sentence to 20 years to life. *Id.*, dkt. 53. Following a four day trial that began on August 22, 2011, a jury found Mr. Harmon guilty on the drug offenses and acquitted him on the additional charges. On January 20, 2012, the Court sentenced him to 360 months in prison. *Id.*, dkt. 119.

The Seventh Circuit affirmed Mr. Harmon's convictions and sentence. *United States v. Harmon,* 721 F.3d 877, 885, 887, 892 (7th Cir. 2013). The United States Supreme Court denied Mr. Harmon's petition for writ of certiorari. *Harmon v. United States,* 134 S. Ct. 1014 (Jan. 21, 2014).

On March 25, 2015, the Court granted Mr. Harmon's motion to reduce sentence pursuant to U.S.S.G. Amendment 782. His sentence of imprisonment of 360 months was reduced to 324 months. Crim. Case; dkt. 231.

On January 22, 2015, Mr. Harmon, by counsel, filed a motion to vacate under 28 U.S.C. § 2255 in this civil case, asserting claims of ineffective assistance of counsel. Counsel's motion to withdraw was granted on March 17, 2015. Dkt. 9. Mr. Harmon, *pro se*, filed an amended motion to vacate on April 27, 2015. Dkt. 14. After the government responded and Mr. Harmon replied, the Court set the matter for a hearing on August 31, 2016, and appointed counsel to represent Mr. Harmon. Dkt. 34. After four continuances were granted, the evidentiary hearing was conducted on February 6, 2018.

Mr. Harmon's motion for leave to file a second amended motion to vacate, filed on February 2, 2018, was granted. In his second amended motion, Mr. Harmon brought two claims of ineffective assistance of counsel. Dkt. 67. On the day of the hearing, however, Mr. Harmon abandoned one of his claims and proceeded with a single claim of ineffective assistance of counsel, that trial counsel failed to properly advise Mr. Harmon during the pretrial period.

## II. § 2255 Hearing

At the evidentiary hearing conducted on February 2, 2018, Mr. Harmon called two witnesses: trial counsel Jack Crawford and himself. In addition to the testimony, several audio recordings of conversations between Mr. Crawford and Mr. Harmon were played and entered into evidence. The Court listened to the recordings of the entire phone calls admitted into evidence after the hearing.

As an initial matter, the Court can appreciate that it must be challenging to have allegations of ineffective assistance of counsel made against an experienced defense attorney, but from the moment the hearing began, Mr. Crawford displayed considerable hostility toward Mr. Harmon's counsel. His defensive attitude made the fact-finding process more difficult than necessary and arguably reflected a bias toward the government.

During the hearing, both Mr. Crawford and Mr. Harmon testified that throughout the pretrial phase of the case, Mr. Crawford viewed the government's case as weak, and he did not believe they had a case against Mr. Harmon. Hearing in § 2255 Case, Transcript, February 6, 2018, ("Trans."); dkt. 71, pp. 12-13, 31, 45-46, 73, 87. Mr. Crawford stated that this was a "historical case," meaning the government could not place any marijuana in Mr. Harmon's possession. *Id.*, p. 73. "It was all in somebody else's possession." *Id.* Mr. Crawford testified that his opinion as to the weakness of the case did not ever change. *Id.*, pp. 81, 87.

3

Mr. Crawford testified that he had never before, as a strategy, sought a speedy trial on the first trial setting. *Id.*, p. 41. He stated that he "certainly would have liked more time, but I felt that time was working against Mr. Harmon. The longer this case pended, the more the Government would find out about a lot of things that would hurt my client." *Id.* Mr. Crawford testified that the Superseding Indictment adding the charges of attempted murder of Mr. Meadows "only increased my desire to get this case to trial." *Id.*, p. 40. Mr. Crawford "was very concerned about what might happen." *Id.* He testified that the government was "learning day by day by day as to how vast [Mr. Harmon's marijuana business] was and what it involved and the people it involved." *Id.*, p. 42. Mr. Crawford thought that with the "correspondent threats to the witnesses," "the picture was getting darker and darker for Danny Harmon with each succeeding week, and we needed to put this case to its proof as soon as possible." *Id.*

Mr. Crawford explained that "[t]he Government's case was getting stronger each day that passed, and I felt that it would be important for Mr. Harmon to ask for a speedy trial, demand his right to a speedy trial, and proceed to trial as quickly as he could." *Id.*, p. 35. He testified that he had discussed this with Mr. Harmon "several times" and Mr. Harmon was "in complete agreement that we needed to get this case to trial. In fact, he, he told me several times. He said, 'Well, you know they are out talking to all my people in New Castle and in Henry County. They are bugging them. Agent Steele is out there. He is scaring the hell out of them.'" *Id.*, pp. 35-36. Mr. Harmon told Mr. Crawford that his people were "going to cave in. They can't withstand this anymore. We have got to get this case over with." *Id.*, pp. 36-37.

During the hearing, Mr. Crawford was asked, "[d]id the U.S. attorney's office ever offer you a plea for Mr. Harmon of any kind?" *Id.*, p. 29. Mr. Crawford responded, "Not a formal plea. I had discussions with [Assistant United States Attorney] Ms. Conour about plea negotiations, and

4

she told me we would have to start at 30, 30 years in prison." *Id.* Mr. Crawford testified that he "told Danny the government's offer was 30 years. He said, 'Forget that.'" *Id.*, p. 30.

Once the Superseding Indictment was filed, Mr. Harmon would not accept any sort of plea that would involve him being convicted for attempted murder. Mr. Crawford testified that Mr. Harmon said, "I had nothing to do with that. I didn't do it, and I would never plead to that." *Id.*, p. 43. Mr. Crawford testified that he told Mr. Harmon that if he pled guilty to all charges, he would "guideline out" at life in prison. *Id.* Mr. Harmon told him, "I am not going to do that." *Id.*

With regard to the possibility of pleading guilty, Mr. Harmon testified that Mr. Crawford told him that "the only way that I could plead guilty [sic] if I, if I wanted to cooperate." *Id.*, p. 50. Mr. Harmon testified that in late June 2011, after Mr. Crawford had reviewed the discovery materials, Mr. Crawford again told him that "[t]he only way that you are going to be able to plead guilty is if you cooperate." *Id.*, p. 52. It was Mr. Harmon's understanding that by "cooperating," the government wanted to "get to my supplier and people around me." *Id.* He was not willing to cooperate. *Id.* Each time they talked about pleading guilty, Mr. Crawford "would always tell me, 'You can't plead guilty unless you cooperate.'" *Id.*; *see also, id.,* pp. 55, 58, 61, 67.

Mr. Crawford testified that from the beginning of the case, Mr. Harmon told him "he would not do any cooperation deal with the government, so forget that." *Id.*, p. 35. Mr. Crawford told Mr. Harmon about a Sentencing Guideline 5K1.1 option through which a defendant might be able to receive a reduction in sentence if he cooperated with the government concerning the defendant's supplier. *Id.* Mr. Crawford testified that Mr. Harmon told him he would not tell the government who his supplier was. Mr. Harmon told Mr. Crawford, "Absolutely not. I will not snitch." *Id.*

Mr. Crawford was asked, "Danny told you from the beginning of the case he was guilty of the drug charges; was that correct?" *Id.*, p. 30. He testified, "He never said the word 'guilty.' He

5

described what he had done. Guilty is a finding of a court or a jury, but as to establishing culpability for the charges, he was very open and told me openly – about his involvement, yes." *Id.*, pp. 30-31.

When asked whether he discussed the possibility of an open plea with Mr. Harmon, Mr. Crawford testified, "Usually I do with my clients. I don't remember with Mr. Harmon if I specifically discussed the possibility of him pleading open. Probably I didn't - - I know I didn't discuss it after the charges were brought for attempting to kill a witness, because he wasn't going to plead to that. So the answer is, I don't remember." *Id.*, p. 39. When asked by the government "if he had done an open plea as to the case, would that have had to be to all pending charges?," Mr. Crawford testified, "yes." *Id.*

Mr. Crawford testified that it is a defendant's option to plead open to the Court "[i]f he is trying to get acceptance of responsibility, yes." *Id.*, p. 44. He stated that "that was not on the table in this case because acceptance of responsibility requires an honest and truthful statement as to other relevant conduct over - - at least not a false denial of other relevant conduct. And Danny wasn't going to admit to a hundred thousand kilograms of marijuana." *Id.*

Mr. Crawford denied telling Mr. Harmon that he could not enter into a guilty plea without cooperating. *Id.,* p. 68. Mr. Crawford testified that he advised Mr. Harmon that he shouldn't enter into a guilty plea because Mr. Harmon "wouldn't get acceptance of responsibility and two levels off on his offense level unless he was truthful or not intentionally false - - did not intentionally falsify other relevant conduct." *Id.*, pp. 68-69. He continued, "[t]he Government had charged him with 100 kilograms which they later raised to a thousand kilograms." *Id.*, p. 69. "The fact is, during the course of his marijuana business, Mr. Harmon had tens of thousands of kilograms, probably 30,000 kilograms, much more than was even alleged." *Id.* "He would have to give a statement

6

about relevant conduct…and if he was not truthful he wouldn't get two levels off, No. 1." *Id.* "And No. 2, if he pled guilty he would be at an offense level 44 or 46, probably getting a life sentence. And that is what - - that is what the United States probation found in their first PSI report is that his, his penalty level was life." *Id.* "What good would it do to plead guilty without an agreement from the government, some type of agreement and get life? To me, it made absolutely no sense." *Id.* Again in asserting that he did not tell Mr. Harmon that he could not plead guilty without cooperating, Mr. Crawford stated, "I wouldn't tell somebody that they didn't have the right to plead guilty. I would say, 'It would be of no benefit to you, Danny, in this case. If you plead guilty outright, including Count VI and VII, you are going to get life,' and he ended up getting 30 years. So the end result was better than an outright plea of guilty." *Id.*, p. 70.

When asked whether Mr. Harmon could have made a choice to plead open to the drug charges, Mr. Crawford responded, "Could he have pled to just the drug charges? No." *Id.*, p. 44. Mr. Crawford did not remember whether he talked to the U.S. Attorney to determine whether that would have been an option. *Id.*, pp. 44-45.

After the government filed the motion to continue the trial on June 30, 2011, Mr. Crawford told Mr. Harmon that the government believed Mr. Harmon was attempting to kill or intimidate a witness, that these accusations were probably the only way the government could get a continuance, and that the government did not want to go to trial and was not ready to go to trial. *Id.* at pp. 23-25.

As one reason for the continuance, the government asserted that "the parties have not had an opportunity to discuss possible resolution without trial and additional time is needed to thoroughly explore that possibility and to complete those discussions." Crim. Case; dkt. 26, ¶ 5. In his objection to the motion for the continuance, Mr. Crawford asserted that "[t]he defendant

7

does not believe that discussion to resolve this short of trial would be beneficial." Crim. Case; dkt. 28, ¶ 4. During the hearing conducted on the motion for continuance, the government acknowledged the defendant's position on plea negotiations. "Even though Mr. Crawford has indicated that there should be no plea negotiations, once again, that is something that we probably should have the opportunity to at least engage in or make an opportunity to Mr. Crawford to have those conversations; and we simply have not had adequate time to do so." Crim. Case; dkt. 146, p. 65. In granting the motion for continuance on July 12, 2011, the Court noted that "[t]o the extent that the Government contends that it should receive a continuance to permit it to undertake plea negotiations, the Court rejects that proposition because Mr. Harmon has indicated that he is not interested in a plea." Crim. Case; dkt. 42, p. 7.

With regard to the strength of the case, testimony during the hearing confirmed that although Mr. Harmon told Mr. Crawford that he did not believe John Meadows, a courier in the drug conspiracy, would ever show up in court, as of June 27, 2011, Mr. Crawford knew that Mr. Meadows was "flipping" on Mr. Harmon and was listed as a witness. Dkt. 71, pp. 13-14. Mr. Crawford knew that Mr. Meadows had been arrested in 2009 with 100 pounds of marijuana in Tulsa, Oklahoma and was arrested again in 2011 with approximately 100 pounds of marijuana in Colby, Kansas. *Id.,* p. 14. Mr. Crawford knew that information had been gathered that Mr. Meadows had made multiple trips to Arizona, which information included hotel, car rental, and flight information. *Id.* Mr. Crawford also knew that during Mr. Meadows' last trip in 2011, there were many texts or phone calls between Mr. Meadows and Mr. Harmon. *Id.*, pp. 15-16.

Mr. Crawford also knew that Mr. Wilkinson, a courier in the conspiracy, would very likely testify against Mr. Harmon. *Id.*, p. 16. He knew that Mr. Wilkinson had been arrested in August of 2009 in Arizona with 200 pounds of marijuana and over $6,000 in cash. *Id.* He also knew that

the government had gathered information establishing that Mr. Wilkinson made multiple trips to Arizona. *Id.*, pp. 16-17. He knew that the government had seized notes taken by Mr. Wilkinson reflecting how much he was owed from his last two trips. *Id.*, p. 18.

Mr. Crawford knew that the government had searched Mr. Harmon's residence in New Castle, as well as his son's residence and a rural property. *Id.* He knew that documents, a piece of paper with numbers on it that was described as a "drug ledger" at trial, multiple vehicles, a radio frequency tracer, and a prepaid phone card, were taken from Mr. Harmon's residence. *Id.*, pp. 18-20. Mr. Crawford knew that four cell phones were taken from Mr. Harmon and his son when they were arrested. *Id.*, p. 20. In May 2011, Mr. Crawford also knew that the government had gathered bank records, credit card records, and tax returns for Mr. Harmon. *Id.*, p. 21. He knew financial records revealed large cash transactions. *Id.*, p. 22. Mr. Crawford knew that Mr. Harmon's cash flow far exceeded his legitimate income, and Mr. Crawford was worried about that. *Id.*

Mr. Crawford knew as of June 14, 2011, that there was a high probability that Brad Raines, a member of the conspiracy, would testify against Mr. Harmon. *Id.*, pp. 22-23. Mr. Crawford also knew that the government had searched Mr. Raines' residence and found marijuana, scales, Ziploc bags, firearms, and $14,000 in cash. *Id.*, p. 23. Yet on June 27, 2011, after Mr. Crawford reviewed 1,000 pages of discovery, he told Mr. Harmon that the government's case against him was "bullshit." *Id.*, p. 23; s*ee also id.*, pp. 45-46 (after reviewing 1,000 pages of discovery, Mr. Crawford told Mr. Harmon that the case against him was "weak.").

Mr. Harmon testified "yes" when asked whether he would have pled guilty if he knew he "could plead without cooperating?" *Id.*, p. 54. He testified "yes" when asked whether he would have "pled guilty at that point if you had known the strength of the Government's case against you?" *Id.*

## III. Discussion

To succeed with a claim of ineffective assistance of counsel, a petitioner must show both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[W]e apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Anderson v. United States,* 865 F.3d 914, 921 (7th Cir. 2017) (internal quotation omitted).

The Sixth Amendment entitles criminal defendants to the effective assistance of competent counsel during the plea bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 162 (2012). It is true that "defendants have no right to be offered a plea … nor a federal right that the judge accept it." *Id.* at 168 (internal quotation omitted). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye,* 566 U.S. 134, 145 (2012). "To a large extent…horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long." *Id.* at 144 (internal quotation omitted). Plea bargaining "is not some adjunct to the criminal justice system; it *is* the criminal justice system." *Id.* (internal quotation omitted). "In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Id.*

To succeed on his specific claim of ineffective assistance of counsel, Mr. Harmon "must show that his counsel's advice to reject the plea agreement and go to trial was objectively

unreasonable, and that absent this advice he would have accepted the plea offer." *Torres-Chavez v. United States,* 828 F.3d 582, 585 (7th Cir. 2016). "While there is a wide range of conduct that constitutes reasonable performance, an attorney's performance is deficient if the attorney grossly mischaracterizes the evidence or advises a client to reject a plea offer and go to trial in the face of overwhelming evidence and no viable defenses." *Id.* In the plea-bargaining context, "a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client…." *Spiller v. United States,* 855 F.3d 751, 755 (7th Cir. 2017) (internal quotation omitted). "In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian v. Bartley,* 495 F.3d 487, 498 (7th Cir. 2007).

Here, counsel's performance was objectively unreasonable in four ways. First, he failed to recognize and communicate to Mr. Harmon the strength of the government's case as it changed over time. Second, he advised his client either that he could only plead guilty if he cooperated with the government (according to Mr. Harmon), or that he should not plead guilty because the acceptance of responsibility reduction would not be of any benefit to him (according to Mr. Crawford). Third, he failed to extend and participate in plea negotiations with the government. Fourth, he operated under the belief that if Mr. Harmon wanted to plead guilty, Mr. Harmon would have to plead guilty to all charges, not just the drug charges.

Mr. Crawford's testimony about the strength of the government's case was striking in its contradictions. He testified that even after reviewing the discovery that revealed the government's case against Mr. Harmon, he told Mr. Harmon that the government's case was "weak." Mr. Crawford continued to believe that the added charges, even though they increased his client's

11

potential minimum sentence from 10 to 20 years in prison, were merely attempts to stall for time and to get a continuance of the trial date. At the same time, he was concerned that the government's case was getting stronger each day against Mr. Harmon. Mr. Harmon himself was concerned about how many of his former customers were being contacted by the authorities. As noted, on direct appeal, the Seventh Circuit described the evidence of Mr. Harmon's guilt on the counts of conviction as "overwhelming." *Harmon,* 721 F.3d at 887. To communicate to Mr. Harmon that the case was "bullshit" or "weak" without adjusting that opinion based on the Superseding Indictment that increased the charge of possession with intent to distribute from 100 to 1,000 kilograms, the identity and number of witnesses, the amounts of marijuana uncovered during various searches, the fact that Mr. Harmon's credit card was used to pay for Meadows' 25 trips, and the discovery of financial records showing the excessive cash flow in relation to Mr. Harmon's legitimate stump removal business, was deficient under these circumstances. Although Mr. Crawford did prepare some countervailing evidence of witnesses for whom Mr. Harmon did tree removal work and of Mr. Harmon having used his home equity and credit cards, to account for the amount of income attributed to Mr. Harmon by the government, the volume of work could not have accounted for Mr. Harmon's spending. Euphemistically, he would have to have removed every stump in Indiana. In sum, Mr. Crawford "grossly mischaracterized" the evidence and allowed his client to go to trial in the face of overwhelming evidence and no viable defense to the drug charges. *Torres-Chavez*, 828 F.3d at 585.

Next, under the United States Sentencing Guidelines, there is a distinction between "cooperating" with the Government and "accepting responsibility." Mr. Crawford overstated to his client what would be required to plead guilty. Mr. Harmon understood cooperation to mean identifying his supplier and other people around him. Mr. Crawford mentioned telling Mr. Harmon

about the 5K1.1 substantial assistance guideline, but that reduction is allowed upon motion of the government and is not the only method by which Mr. Harmon could have received a sentence reduction by pleading guilty.

To obtain a two level decrease in offense level, the Acceptance of Responsibility guideline, U.S.S.G. 3E1.1, provides that

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Application Notes:

1. In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

In other words, to accept responsibility and obtain a two level reduction under 3E1.1(a), a defendant must be truthful in admitting the conduct with which he was charged. *Id.* He is not required to volunteer or admit relevant conduct beyond the offense of conviction, though he cannot falsely deny it. Nothing in the Acceptance of Responsibility guideline requires the identification of suppliers. Under subpart (b) of the § 3E1.1 guideline, an additional one level reduction could

be obtained upon motion of the government if it is timely notified of the defendant's intention to plead guilty and thereby allowing the government to avoid preparing for trial. *Id.* As noted, there is a discrepancy between the advice Mr. Crawford claimed he gave about acceptance of responsibility, and the advice Mr. Harmon believed he received about a requirement of cooperation. This Court is not aware of any requirement that such legal advice concerning the contours of the plea offer must be memorialized in writing and perhaps there are strategic reasons for not doing so. That said, absent strategic reasons to not place the content of plea negotiations in a written document, the Court encourages defense counsel to consider the benefits of written communication of both plea offers and the potential consequences of rejecting those offers.

As the government's case became stronger "day by day," it was objectively unreasonable for Mr. Crawford not to discuss with Mr. Harmon on what terms he might be willing to plead guilty. Mr. Crawford never engaged in the process of negotiation. Rather, the initial and cursory mention of "30 years" was soundly rejected without any further inquiry or counter-proposal. In a somewhat unusual circumstance, there is evidence in this record that the government wanted to have an opportunity to further negotiatea plea agreement, but defense counsel failed to explore any such options. An attempt at negotiation should have been made.

Finally, an open plea is simply a guilty plea without a plea agreement. Contrary to Mr. Crawford's testimony, a defendant may enter into an open guilty plea as to only a subset of all counts charged in an indictment. *See United States v. Martin*, 528 F.3d 746, 750 (10th Cir. 2008) (doubting that court could reject unconditional guilty plea as to certain charges "to avoid confusing the jury or complicating the evidentiary issues" as to the remaining claims where the requirements of Rule 11(b) were met). Indeed, that proposition is so well established that the Seventh Circuit has addressed the situation many times without hesitation. *See, e.g.*, *United States v. Pittman*, 642

14

F.3d 583 (7th Cir. 2011) (rejecting vindictive prosecution argument where government continued to prosecute remaining counts in indictment after defendant pleaded guilty to only a "subset of the counts set forth in his indictment"); *United States v. Edwards*, 606 F. App'x 851, 852 (7th Cir. 2015) (discussing guilty plea to some but not all charged counts); *United States v. Cox*, 59 F. App'x 144, 145 (7th Cir. 2003) (same); *Stewart v. Peters*, 958 F.2d 1379, 1386 (7th Cir. 1992) (discussing impact of contemplated partial guilty plea); *see also* 1A Charles Allen Wright et al., Federal Practice & Procedure § 171 (4th ed. 2007) (discussing evidentiary issues implicated by partial guilty plea without questioning basis for the partial plea). Exacerbating this circumstance was Mr. Crawford's unfounded belief that Mr. Harmon would have to cooperate in the sense of disclosing the identity of his supplier. He never tested this theory with the government.

"Adequate preparation of a defense includes the ability to intelligently weigh one's plea options." *United States v. Mackin,* 793 F.3d 703, 711 (7th Cir. 2015); *United States v. Lee,* 573 F.3d 155, 165 (7th Cir. 2009) ("Lee might have chosen to enter into plea negotiations with the Government if he had accurate information about the strength of its case," stated in the context of the government's failure to disclose evidence during discovery that would likely defeat defendant's defense).

As noted, if counsel advises a defendant to reject a plea offer, a petitioner "must show first, that his counsel's performance fell below an objective standard of reasonableness; and second, that the outcome of the plea process would have been different with competent advice." *Sawyer v. United States,* 874 F.3d 276, 278-79 (7th Cir. 2017) (internal quotation omitted). In this context, the second prong of the test requires the petitioner "to show that there is a reasonable probability that the plea offer would have been presented to the court, the court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed."

15

*Id.* at 279. (internal quotation omitted). Here, Mr. Harmon testified that if he had been advised that he could plead guilty without "cooperating," *i.e.,* revealing his supplier, he would have pled guilty. Mr. Harmon also testified that if he had known the strength of the government's case against him, he would have pled guilty.

If Mr. Harmon had made an open plea to the drug charges only, with the two level reduction available under 3E1.1, it is probable that Mr. Harmon's sentence would have been based on an adjusted offense level of 40 (instead of 42) and a criminal history category of II. The guideline range would then be reduced from 360 months to life, to 324 to 405 months. The Court, having sentenced Mr. Harmon to the low end of the guidelines, Crim. Case; dkt. 151, p. 105 (sentencing transcript), may have sentenced him to 324 months instead of 360. If this were the sentence at the time the 782 Amendment were filed and granted, Mr. Harmon would have then been eligible for a guideline range of 262 to 327 months. The Court finds that Mr. Harmon has shown that absent counsel's deficient performance, the outcome of the plea process would have been different and he has therefore been prejudiced.

## IV. Conclusion

The foregoing circumstances show that Mr. Harmon is entitled to relief pursuant to 28 U.S.C. § 2255. The motion for relief pursuant to § 2255 is therefore **GRANTED.** Mr. Harmon is entitled to be re-sentenced, and he may argue for the benefit of a two level reduction for acceptance of responsibility and the reduction already granted through the 782 Amendment. This matter will be set for re-sentencing, and an updated presentence report will be ordered. . Judgment consistent with this Entry shall now issue.

**This Entry shall also be entered on the docket in the underlying criminal action, No. 1:11-cr-00084-JMS-DKL-1.**

**IT IS SO ORDERED.**

Date: 3/6/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE (Evansville)
pamela.domash@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
breitz@usa.doj.gov

Sara J. Varner
INDIANA FEDERAL COMMUNITY DEFENDERS
sara.varner@fd.org

Joe Howard Vaughn
UNITED STATES ATTORNEY'S OFFICE
joe.vaughn@usdoj.gov

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE
bob.wood@usdoj.gov